UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-23649-BLOOM/Elfenbein

**BOOM FUNDED, LLC**,

    Plaintiff,

v.

**AEVA, LLC**, *et al.*,

    Defendants.

_____/

## ORDER AWARDING RULE 37 SANCTIONS

**THIS CAUSE** is before the Court on Plaintiff Boom Funded, LLC's Oral Motion for Sanctions Under Federal Rule of Civil Procedure 37 (the "Motion"). *See* ECF No. [31]. In the Motion, which Plaintiff made during a December 16, 2024 discovery hearing (the "Hearing"), *see* ECF No. [23]; ECF No. [27], Plaintiff asked the Court to order Defendant Aeva, LLC[1] to pay the fees and costs it incurred to file its Notice of Hearing, *see* ECF No. [24], and Supplemental Notice of Hearing, *see* ECF No. [28], and to move to compel better responses to its discovery requests, *see* ECF No. [29]; ECF No. [30]. Specifically, Plaintiff requested that Defendant Aeva be required to pay for Plaintiff's costs to prepare the Notices, to prepare for the Hearing, to travel to and from the Hearing, and to attend the Hearing. *See* ECF No. [32] at 7.

In a post-Hearing Order, the Court granted the Motion. *See* ECF No. [32] at 7–9. As explained in that Order, an award of attorney's fees under Rule 37 was warranted because the Court granted Plaintiff's Oral Motions to Compel, *see* ECF No. [32] at 2–7; Fed. R. Civ. P. 37(a)(5)(A), and none of the three exceptions to Rule 37, which would preclude an award of fees,

---

[1] Plaintiff is not seeking Rule 37 sanctions against Defendant Barbara Deinet. *See* ECF No. [32] at 7 n.1.

applied, *see* ECF No. [32] at 7–9; Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii).  To allow the Court to calculate the appropriate award amount, it ordered Plaintiff's counsel, Yaniv Adar, to "file an affidavit detailing the amount of time it took to prepare the Notice, to prepare for the Hearing, to travel to and from the Hearing, and to attend the Hearing," along with counsel's "hourly rate."  *See* ECF No. [32] at 9.  Plaintiff's counsel has now filed that affidavit.  *See* ECF No. [33]; ECF [33-1].

## I.     LEGAL STANDARDS

To calculate attorney's fee awards, courts generally use the "lodestar" method.[2]  *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *Inj. Treatment Ctr.*, 2022 WL 17325834, at *2.  "The most useful starting point for determining the amount of a reasonable fee" using the lodestar method "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services."  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (noting that the lodestar is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate" (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984))). "[T]here is a 'strong presumption' that the lodestar is the reasonable

---

[2] The Eleventh Circuit has never held that the lodestar method is required when calculating attorney's fees awarded under Rule 37, but in an unpublished opinion it has approved of using the lodestar method in this context.  *See Smith v. Atlanta Postal Credit Union*, 350 F. App'x 347, 349–50 (11th Cir. 2009) (affirming an award of attorney's fees under Rule 37 and noting the district court had not "abused its discretion in calculating and adhering to the lodestar").  *But see Nat'l Union Fire Ins. Co. v. Olympia Holding Corp.*, 140 F. App'x 860, 864 n.1 (11th Cir. 2005) (noting that "civil contempt sanctions do not require the use of the lodestar method").  Courts in this District has likewise applied the lodestar method in a Rule 37 context. *See, e.g.*, *Inj. Treatment Ctr. of Fort Myers, Inc. v. Starr Indem. & Liab. Co.*, No. 21-CV-80156, 2022 WL 17325834, at *2 (S.D. Fla. Nov. 4, 2022); *Nelson v. BP Expl. & Prod. Inc.*, No. 18-CV-62537, 2019 WL 2864768, at *1–2 (S.D. Fla. July 2, 2019); *Le Roux v. Monte Cassino*, No. 18-62131-CIV, 2019 WL 2256592, at *1–2 (S.D. Fla. Mar. 4, 2019). *But see Carro v. Integrated Tech, Grp., LLC*, No. 14-CV-23788-PAS, 2016 WL 6534456, at *2 (S.D. Fla. Feb. 26, 2016) (finding "it is not necessary to engage in a lodestar analysis" in a Rule 37 case).

sum the attorneys deserve." *See Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565–66 (1986)).

"The first step in the computation of the lodestar is determining the reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* (quoting *Norman*, 836 F.2d at 1299). "The general rule is that the relevant market for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." *Barnes*, 168 F.3d at 437. "The party seeking attorney's fees bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates," which requires "more than the affidavit of the attorney performing the work." *Loranger*, 10 F.3d at 781 (citation and quotation marks omitted). Of course, the court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."[3] *Id.* (quotation marks omitted).

To aid in determining what reasonable hourly rate applies in each case, the Eleventh Circuit has approved of courts considering "the twelve factors discussed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)." *Id.* at 781 n.6; *see also Norman*, 836 F.2d at 1299. "The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of

---

[3] Indeed, where "there is a lack of documentation or testimonial support the court may make the award on its own experience. Where documentation is inadequate, the district court is not relieved of its obligation to award a reasonable fee, but the district court traditionally has had the power to make such an award without the need of further pleadings or an evidentiary hearing. Likewise, no additional evidentiary hearing or pleadings are required where fee counsel fails to provide evidence on some factor which it contends the court ought to take into account. It is perfectly proper to award attorney's fees based solely on affidavits in the record." *Norman*, 836 F.2d at 1303 (footnote and citations omitted).

the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley*, 461 U.S. at 430 n.3.

"The next step in the computation of the lodestar is the ascertainment of reasonable hours." *Norman*, 836 F.2d at 1301. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. "In other words, the Supreme Court requires fee applicants to exercise 'billing judgment.'" *Norman*, 836 F.2d at 1301 (quoting *Hensley*, 461 U.S. at 437). "This must necessarily mean that the hours excluded are those that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel. If it were otherwise, an inexperienced or unskillful attorney would face a double penalty. First, his hourly rate would be lowered and second, his time reduced." *Id.* (emphasis and citation omitted).

The "district court is charged with deducting for redundant hours. Redundant hours generally occur where more than one attorney represents a client. There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Id.* at 1301–02. The "district court must deduct time spent on discrete and unsuccessful claims." *Id.* at 1302. "When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may

4

reduce the requested hours with an across-the-board cut." *Bivins*, 548 F.3d at 1350; *see also Hensley*, 461 U.S. at 436–37 ("There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.").

As noted above, the "product" of the reasonable hourly rate and the number of hours reasonably expended on the litigation "is the lodestar." *See Bivins*, 548 F.3d at 1350. After determining the lodestar amount, courts can "adjust the fee upward or downward, including [by considering] the important factor of the results obtained." *Hensley*, 461 U.S. at 434 (quotation marks omitted). "If the result was excellent, then the court should compensate for all hours reasonably expended." *Norman*, 836 F.2d at 1302. "If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive." *Id.*; *see also Bivins*, 548 F.3d at 1350–51 ("When the number of compensable hours and the hourly rate are reasonable, a downward adjustment to the lodestar is merited only if the prevailing party was partially successful in its efforts."). "A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Norman*, 836 F.2d at 1302. "Where all theories derive from a common core of operative facts, the focus should be on the significance of overall results as a function of total reasonable hours. It is improper to make the reduction based on a simple ratio of successful issues to issues raised." *Id.* (citation omitted).

"[T]he determination of fees should not result in a second major litigation." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quotation marks omitted). "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* Whatever the court decides, it must "provide a concise but clear explanation

5

of its reasons for the fee award. When an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Hensley*, 461 U.S. at 437.

## II.    DISCUSSION

As noted above, Plaintiff's counsel, Yaniv Adar ("Adar"), filed an affidavit detailing both his hourly rate and the number of hours he spent on the relevant discovery disputes. *See* ECF No. [33]; ECF [33-1]. In it, he avers that his billable rate is $845 per hour. *See* ECF No. [33-1] at 2. The affidavit also includes details about Adar's role at his law firm and in this case, but it does not include any other information about his background, credentials, or experience. *See* ECF No. [33-1] at 2. The affidavit states only that Adar is a partner at his law firm and lead counsel for Plaintiff. *See* ECF No. [33-1] at 2. The affidavit does not contain details about any other attorneys in the relevant legal community (which in this case is South Florida) with skills, experience, and reputations reasonably comparable to Adar. *See* ECF No. [33-1] at 2.

Adar also avers that he spent "3.4 hours preparing the Notice of Hearing"; "0.5 hours traveling to and from the courthouse to attend the" Hearing; and "0.75 hours attending and arguing the" Hearing. *See* ECF No. [33-1] at 1–2. That amounts to a total of 4.65 hours of attorney time.

Although this Circuit's precedent does not require it, the Court will use the lodestar method to calculate the amount of attorney's fees appropriate here, as most courts in this District do. The lodestar is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. *See Barnes*, 168 F.3d at 427. Starting with the reasonable hourly rate, the Court must determine what the prevailing market rate in South Florida is for similar services by lawyers of skills, experience, and reputation reasonably comparable to those of

Plaintiff's counsel. *See Loranger*, 10 F.3d at 781; *Barnes*, 168 F.3d at 437. To do that, the Court may use its own knowledge and experience and may consider the twelve *Johnson* factors. *See Loranger*, 10 F.3d at 781; *Norman*, 836 F.2d at 1299. Ultimately, however, it is Plaintiff's burden to prove that the requested rate is in line with prevailing market rates. *See Loranger*, 10 F.3d at 781.

Plaintiff seeks attorney's fees for time Adar billed at a rate of $845 per hour. *See* ECF No. [33-1] at 2. Having considered the information contained in the affidavit and the *Johnson* factors — particularly awards in similar cases, *see Hensley*, 461 U.S. at 430 n.3 — and in view of the Court's own knowledge and experience as a practitioner in this District for almost twenty years, *see Norman*, 836 F.2d at 1303, the Court finds that the requested hourly rate is higher than those awarded to similarly situated attorneys within this District. A survey of case law from the last five years demonstrates that courts have found hourly rates in the $500 to $700 range reasonable for similarly situated attorneys in comparable civil actions.[4] In fact, the Court recently found

---

[4] *See, e.g.*, *Caldwell v. Seychelles Ltd., LLC*, No. 0:23-CV-61267, 2024 WL 4202125, at *2–3 (S.D. Fla. Aug. 16, 2024) (awarding hourly rates of $450 and $625 to attorneys in a dispute involving an injury on a boat); *Salerno v. TopDoc Clinics Miami, LLC*, No. 1:23-CV-23882-JAL, 2024 WL 2277794, at *7 (S.D. Fla. Apr. 30, 2024), *report and recommendation adopted*, No. 23-23882-CIV, 2024 WL 2273374 (S.D. Fla. May 20, 2024) (awarding hourly rates of $425 and $575 to attorneys in an intellectual property licensing dispute); *In re Gonzalez*, No. 20-MC-24628, 2023 WL 7461814, at *3–5 (S.D. Fla. Oct. 6, 2023), *appeal dismissed sub nom. Gonzalez v. Verfruco Foods, Inc.*, No. 23-13704, 2023 WL 8623437 (11th Cir. Dec. 13, 2023), *and aff'd*, No. 1:20-MC-24628, 2023 WL 9422463 (S.D. Fla. Dec. 21, 2023) (reducing the requested hourly rates from $850, $680, $650, and $535 to $700, $650, $550, and $500 respectively in the context of a § 1782 application); *Soc. Life Network, Inc. v. Peak One Opportunity Fund, L.P.*, No. 21-21373-CV, 2023 WL 5053985, at *1, *4, *6–7 (S.D. Fla. July 20, 2023), *report and recommendation adopted*, No. 21-CV-21373, 2023 WL 5036606 (S.D. Fla. Aug. 8, 2023) (awarding hourly rates of $300, $500, and $700 to attorneys in a start-up company stock dispute); *CITGO Petroleum Corp. v. Petroleum Logistics Serv. USA, Inc.*, No. 22-MC-20762, 2022 WL 17718802, at *4–5 (S.D. Fla. Nov. 30, 2022), *report and recommendation adopted*, No. 22-MC-20762, 2022 WL 17716483 (S.D. Fla. Dec. 15, 2022) (reducing the requested hourly rates from $1147.50, $988.13, $935, $796.88, $758.63, $531.25, and $312.38 to $850, $825, $850, $750, $700, $500, and $300 respectively on a motion to compel deposition testimony in a fraud and RICO dispute); *Davis v. Nationwide Ins. Co. of Am.*, No. 19-CV-80606, 2022 WL 2341238, at *2–4 (S.D. Fla. Jan. 28, 2022) (reducing the requested hourly rate from $900 to $600 in an insurance bad faith dispute); *Kleiman v. Wright*, No. 18-80176-CV, 2020 WL 1980601, at *3–4 (S.D. Fla. Mar. 17, 2020) (reducing the requested

reasonable a rate of $550 for a law partner in a similar civil action who graduated from law school in 2009, just a year later than Adar graduated. *See* https://markmigdal.com/yaniv-adar (last visited Jan. 22, 2025). Accordingly, the Court finds it appropriate to reduce Adar's hourly rate to $550.

Moving to the second step in the lodestar analysis, the Court must determine the number of hours reasonably expended on the litigation. *See Barnes*, 168 F.3d at 427. In doing so, the Court has a duty to ensure that counsel for the prevailing party has exercised "billing judgment," meaning counsel has made a good faith effort to exclude from the fee request any hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission to his client. *See Norman*, 836 F.2d at 1301–02; *Hensley*, 461 U.S. at 434, 437. After a review of the time entries included in the affidavit, *see* ECF No. [33-1] at 1–2, the Court finds that the number of hours claimed is reasonable.

In its order granting the Motion, the Court ordered Plaintiff's counsel to detail the number of hours he spent on four specific categories of tasks: (1) preparing the Notices; (2) preparing for the Hearing; (3) traveling to and from the Hearing; and (4) attending the Hearing. *See* ECF No. [32] at 9. The Court ordered Plaintiff's counsel to detail that information because those are the tasks for which the Court finds it appropriate to award attorney's fees. Adar's affidavit includes the required information. *See* ECF No. [33-1] at 1–2.

Specifically, it notes that he spent 3.4 hours preparing the Notice of Hearing, which included 2 hours of drafting and 1.4 hours of legal research; 0.5 hours traveling to and from the courthouse to attend the Hearing; and 0.75 hours attending and arguing the Hearing. *See* ECF No. [33-1] at 1–2. That amounts to a total of 4.65 hours of attorney time, all of which falls into one of the four categories of tasks for which the Court finds it appropriate to award attorney's fees. As a

---

hourly rates from $1050, $900, $690, and $610 to $675, $500, $350, and $300 respectively in a protracted litigation over production of documents identifying bitcoin holdings).

result, the Court finds that amount of time both reasonable, *see* Fed. R. Civ. P. 37(a)(5)(A), and within the scope of the activities the Court found appropriate for a Rule 37 award, *see* ECF No. [32] at 7–9.

Multiplying the 4.65 hours Adar reasonably expended on the litigation by the $550 hourly rate the Court deemed reasonable equals $2,557.50 in attorney's fees for Adar's work. That amount is the lodestar. *See Hensley*, 461 U.S. at 433; *Bivins*, 548 F.3d at 1350; *Barnes*, 168 F.3d at 427. And although the Court can adjust that fee amount upward or downward, *see Hensley*, 461 U.S. at 434, it finds that the lodestar is the reasonable sum the attorney deserves. *See Bivins*, 548 F.3d at 1350 (noting that there is a strong presumption that the lodestar is the reasonable sum the attorney deserves).

### III. CONCLUSION

Accordingly, the Court **AWARDS** Plaintiff $2,557.50 under Rule 37(a)(5)(A). Defendant Aeva **SHALL** pay Plaintiff $2,557.50 **no later than February 23, 2025**.

**DONE AND ORDERED** in Chambers in Miami, Florida on January 22, 2025.

*[signature]*

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All counsel of record